PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

MARY JO WHITE (*pro hac vice*)
mjwhite@debevoise.com
ANDREW J. CERESNEY (*pro hac vice*)
aceresney@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile:   (212) 909-6836

Attorney for Defendants
Ripple Labs Inc., XRP II, LLC, and Bradley
Garlinghouse

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RYAN COFFEY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RIPPLE LABS INC., et al., <br><br> Defendants. | CASE NO.: 4:18-cv-03286-PJH <br><br> 1) MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND; <br><br> 2) DECLARATION OF VIRGINIA F. MILSTEAD (filed under separate cover); and <br><br> 3) [PROPOSED] ORDER (lodged under separate cover). <br><br> Date:     August 1, 2018 <br> Time:     9:00 a.m. <br> Courtroom: 3 <br> Judge:    Hon. Phyllis J. Hamilton |

1

## **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................................ ii

3

ISSUES TO BE DECIDED ................................................................................................ 1

4

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

5

I.      PRELIMINARY STATEMENT ................................................................ 1

6

II.     FACTUAL BACKGROUND ...................................................................... 4

7

III.    REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT ......... 6

8

        A.      Removal Is Proper Under CAFA ................................................. 6

9

        B.      Section 22(a) And Luther Do Not Bar Removal Under CAFA ..................... 7

10

                1.      Background Regarding Removal Of Actions That Joined
                        Removable And Non-Removable Claims Prior To CAFA................ 9

11

12
                2.      Congress Enacted CAFA But Did Not Include The "Except
                        As Otherwise Expressly Provided By Act Of Congress"
                        Language, Distinguishing CAFA From The General Removal
13                      Statute .......................................................................... 12

14

        C.      Luther Requires Limitation Or Reconsideration........................................... 15

15

                1.      Luther Is Irreconcilable With Dart Cherokee ................................. 15

16

                2.      Luther's Conclusion That Section 22(a) Is More Specific
                        Than CAFA Has Been Rejected By Subsequent Appeals And
17                      District Court Authority.................................................................. 17

18

                3.      Luther Failed To Consider The Express Exceptions To CAFA
                        Removal ......................................................................................... 18

19

        D.      SLUSA Does Not Preclude Removal ........................................................ 19

20

        E.      Plaintiff's Policy Arguments Ignore The Overriding Policy Of CAFA ....... 22

21

IV.     THE   COURT   SHOULD   DENY   PLAINTIFF'S   REQUEST   FOR
        ATTORNEY'S FEES AND COSTS ................................................................. 23

22

23

V.      CONCLUSION................................................................................................ 23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Allen v. Boeing,
    784 F.3d 625 (9th Cir. 2015) ............................................................... 12

Appert v. Morgan Stanley Dean Witter, Inc.,
    673 F.3d 609 (7th Cir. 2012) ............................................................... 20

Blausey v. United States Trust,
    552 F.3d 1124 (9th Cir. 2009) ............................................................. 19

Broadway Grill, Inc. v. Visa Inc.,
    856 F.3d 1274 (9th Cir. 2017) ............................................................... 7

Brown v. Mortgage Electronic Registration Systems, Inc.,
    738 F.3d 926 (8th Cir. 2013) ................................................................. 9

California Public Employees' Retirement System v. WorldCom, Inc.,
    368 F.3d 86 (2d Cir. 2004)........................................................... passim

Cervantes v. Dickerson,
    No. 15-cv-3825-PJH,
    2015 WL 6163573 (N.D. Cal. Oct. 21, 2015).................................... 8, 21

City of Chicago v. International College of Surgeons,
    522 U.S. 156 (1997) ........................................................................... 10

Cobalt Partners, LP v. Sunedison, Inc.,
    No. C 16-02263 WHA,
    2016 WL 4488181 (N.D. Cal. Aug. 26, 2016) ................................. 13, 21

Commodity Futures Trading Commission v. McDonnell,
    287 F. Supp. 3d 213 (E.D.N.Y. 2018) ............................................... 4, 5

Cyan, Inc. v. Beaver County Employees Retirement Fund,
    138 S. Ct. 1061 (2018)................................................... 3, 20, 21, 22

Dart Cherokee Basin Operating Co. v. Owens,
    135 S. Ct. 547 (2014) ................................................................... passim

Duncan v. Walker,
    533 U.S. 167 (2001) ........................................................................... 14

Emrich v. Touche Ross & Co.,
    846 F.2d 1190 (9th Cir. 1988) ............................................................. 11

Estate of Pew v. Cardarelli,
    527 F.3d 25 (2d Cir. 2008)............................................................ 20, 22

Exxon Mobil Corp. v. Allapattah Services, Inc.,
    545 U.S. 546 (2005)......................................................................... 2, 9

F5 Capital v. Pappas,
    856 F.3d 61 (2d Cir. 2017)
    cert. denied, 138 S. Ct. 473 (2017) ................................................................. 2, 9

Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville Ltd. P'Ship,
    702 F. Supp. 1417 (W.D. Ark. 1988).............................................................. 10, 11

FDIC v. Countrywide Financial Corp.,
    No. 11-CV-10400-MRP-MANx,
    2012 WL 12897152 (C.D. Cal. Mar. 20, 2012)................................................... 14

Gonsalves v. Amoco Shipping Co.,
    733 F.2d 1020 (2d Cir. 1984)............................................................................. 11

Holt v. Noble House Hotels & Resort, Ltd.,
    No. 17cv2246-MMA (BLM),
    2018 WL 539176 (S.D. Cal. Jan. 23, 2018)........................................................ 7

Jordan v. Nationstar Mortgage LLC,
    781 F.3d 1178 (9th Cir. 2015) ...................................................................... 16, 23

Katz v. Gerardi,
    552 F.3d 558 (7th Cir. 2009) ...................................................... 17, 18, 19, 20, 21

Kircher v. Putnam Funds Trust,
    547 U.S. 633 (2006)........................................................................................... 21

Luther v. Countrywide Home Loans Servicing LP,
    533 F.3d 1031 (9th Cir. 2008) .................................................................... passim

Miller v. Gammie,
    335 F.3d 889 (9th Cir. 2003) ............................................................................. 16

Mississippi ex. rel. Hood v. AU Optronics Corp.,
    571 U.S. 161 (2014)........................................................................................... 12

New Jersey Carpenters Vacation Fund v. Harborview Mortgage Loan Trust 2006-4,
    581 F. Supp. 2d 581 (S.D.N.Y. 2008)....................................... 12, 16, 18, 19, 20

Pacific Life Insurance Co. v. J.P. Morgan Chase & Co.,
    No. SA CV 03-813 GLT (ANX),
    2003 WL 22025158 (C.D. Cal. June 30, 2003) .................................................. 13

Passarella v. Ginn Co.,
    637 F. Supp. 2d 353 (D.S.C. 2009).......................................................... 14, 18, 19

Public Employees Retirement System of Mississippi  v. Morgan Stanley,
    605 F. Supp. 2d 1073 (C.D. Cal. 2009) ....................................................... 15, 23

Rajasekaran v. CytRx Corp.,
    No. CV 14-3406-GHK (RJWx),
    2014 WL 4330787 (C.D. Cal. Aug. 21, 2014)................................................. 8, 21

Rossetti v. Stearn's Products, Inc.,
    No. CV 16-1875-GW (SSx),
    2016 WL 3277295 (C.D. Cal. June 6, 2016) ....................................................... 7

iii

Russello v. United States,
    464 U.S. 16 (1983).................................................................................................... 15

Spalo v. Union Pacific R. Co.,
    No. 17 C 3357,
    2017 WL 2908775 (N.D. Ill. July 7, 2017)..................................................... 11, 12

Standard Fire Insurance Co. v. Knowles,
    568 U.S. 588 (2013)............................................................................................. 2, 22

Tuttle v. Sky Bell Asset Management, LLC,
    No. C10-03588 WHA,
    2011 WL 208060 (N.D. Cal. Jan. 21, 2011) ................................................... 13, 20

U.S. Industries v. Gregg,
    348 F. Supp. 1004 (D. Del. 1972),
    rev'd on other grounds, 540 F.2d 142 (3d Cir. 1976) ........................... 10, 11, 22

United States v. Providence Journal Co.,
    485 U.S. 693 (1988) ................................................................................................. 12

**STATUTES**

15 U.S.C. § 77p(b) .......................................................................................................... 20

15 U.S.C. § 77p(c) ....................................................................................................... 3, 20

15 U.S.C. § 77p(f)(3) ................................................................................................... 7, 20

15 U.S.C. § 77v(a) ..................................................................................................... 1, 7, 8

28 U.S.C. § 1332(d) ................................................................................................ 1, 2, 14

28 U.S.c. § 1332(d)(2) ..................................................................................................... 6

28 U.S.C. § 1332(d)(6) ..................................................................................................... 7

28 U.S.C. § 1441(a) ................................................................................................... 10, 18

28 U.S.C. § 1441(c)(2) .................................................................................................... 15

28 U.S.C. § 1445(a) ........................................................................................................ 10

28 U.S.C. § 1445(b) ........................................................................................................ 10

28 U.S.C. § 1452 ............................................................................................................. 21

28 U.S.C. § 1453 ..................................................................................................... 1, 2, 18

28 U.S.C. § 1453(b) ............................................................................................... 2, 6, 13

28 U.S.C. § 1453(d) ........................................................................................................ 13

28 U.S.C. § 1453(d)(1) ............................................................................................ 7, 19, 20

28 U.S.C. § 1453(d)(2) .............................................................................................. 7, 19

iv

28 U.S.C. § 1453(d)(3) ................................................................................ 7, 19

**OTHER AUTHORITIES**

16 Moore's Federal Practice – Civil § 107.9[1][b] (2018) .............................. 16

2 McLaughlin on Class Actions § 12:6 (14th ed. 2017) ................................. 18

Order Granting Motion to Remand, <u>Baker v. Dynamic Ledger Solutions, Inc.</u>, 17-cv-06850-
    RS (N.D. Cal. Apr. 19, 2018) ............................................................ 21

Trevor M. Cutaiar, "Are Securities Act of 1933 Claims Filed In State Court Removable
    Under The Class Action Fairness Act of 2005? A Proposed Resolution To A
    Statutory Conflict,"
    55 Loy. L. Rev. 559 (2009) ............................................................... 22

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND        CASE NO. 4:18-CV-03286-PJH

Defendants Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), and Bradley Garlinghouse (collectively, "Defendants") respectfully submit this Opposition to Plaintiff's Motion to Remand ("Motion" or "Mot.") (ECF No. 16).

## ISSUES TO BE DECIDED

1.      Whether Plaintiff's Motion should be denied because this Action, asserting both state and federal claims, was properly removed under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453?

2.      Whether Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), bars removal of nationwide class actions asserting violations, not only of the Securities Act of 1933, but also of state law, which state law claims are indisputably removable under CAFA?

3.      Whether Plaintiff's Motion should be denied because the decision in <u>Luther v. Countrywide Home Loans Servicing LP</u>, 533 F.3d 1031 (9th Cir. 2008), upon which Plaintiff principally relies (i) is distinguishable, as the instant case asserts removable state law claims while <u>Luther</u> only involved claims under the Securities Act of 1933; and/or (ii) should be limited or reconsidered because it is clearly irreconcilable with the United States Supreme Court decision in <u>Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct. 547 (2014), and/or subsequent court of appeals and district court authority?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      PRELIMINARY STATEMENT

This putative class action ("Action") concerns Defendants' alleged sales of a virtual currency—XRP—to "larger investors" and on alleged "cryptocurrency exchanges" throughout the United States and the world.  (Compl. ¶¶ 26, 122 (ECF No. 1-1).)  Raising a misguided theory that XRP is a "security" under federal and state securities laws—despite no federal or state court ever applying such a designation to a virtual currency such as XRP—Plaintiff, who allegedly purchased 650 XRP on a "cryptocurrency exchange" in January 2018 and sold it at a $551.89 loss twelve days later (Compl. ¶¶ 26, 119-121), filed this Action in the Superior Court of California, County of San Francisco.  Plaintiff alleges violations of the registration requirements of the federal Securities Act of 1933 ("Securities Act") and qualification requirements of the California Corporations Code on

1   behalf of all purchasers of XRP since January 1, 2013.  (Compl. ¶ 122.)  Because this far-reaching,

2   nationwide class action is exactly the type of litigation for which Congress sought to provide a

3   federal forum through the Class Action Fairness Act of 2005 ("CAFA"), Defendants removed this

4   Action to this Court pursuant to CAFA's express provisions   (ECF No. 1).  See 28 U.S.C.

5   §§ 1332(d), 1453; Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (observing that

6   CAFA's "primary objective" was to ensure "'Federal court consideration of interstate cases of

7   national importance'") (citation omitted).

8       Plaintiff does not, and cannot, dispute that the requirements for CAFA removal are satisfied

9   in this Action with respect to each of his claims.  CAFA confers federal jurisdiction and authorizes

10  removal, "if the class has more than 100 members, the parties are minimally diverse, and the

11  amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co. v. Owens, 135 S.

12  Ct. 547, 552 (2014); see also 28 U.S.C. §§ 1332(d), 1453(b).  This Action, purportedly brought on

13  behalf of "thousands" across both the nation and the world and placing at least $342.8 million in

14  controversy, easily satisfies CAFA's requirements.  See infra Part III.A.

15      Instead, Plaintiff asserts two flawed arguments to support his Motion.  First, Plaintiff asserts

16  that Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031 (9th Cir. 2008), concluded

17  that Section 22(a) of the Securities Act ("Section 22(a)"), which bars removal of cases arising

18  under the Securities Act, "trumps" CAFA's express grant of removal authority and forecloses

19  removal of any case that includes alleged violations of the Securities Act, even if it also includes

20  other removable claims.  Plaintiff is wrong.  Luther involved only Securities Act claims and limited

21  its holding to actions including "only" claims under the Securities Act.  Luther, 533 F.3d at 1034.

22      In this Action, in contrast, Plaintiff chose to assert state law claims under the California

23  Corporations Code in addition to Securities Act claims.   This distinction is critical because

24  Plaintiff's state law claims independently satisfy CAFA's requirements for removal, a point

25  Plaintiff does not dispute.  The presence of Plaintiff's state law claims makes this whole action

26  removable regardless of Plaintiff's Securities Act claims.  See Exxon Mobil Corp. v. Allapattah

27  Servs., Inc., 545 U.S. 546, 559 (2005) ("If the court has original jurisdiction over a single claim in

28  the complaint, it has original jurisdiction over a 'civil action.'"); F5 Capital v. Pappas, 856 F.3d 61,

82 (2d Cir. 2017) (concluding that class action was properly removed under CAFA and that the federal court could exercise supplemental jurisdiction over state law derivative claims that were otherwise not removable); see infra Part III.B.  Luther did not address the circumstance in which Securities Act claims are brought alongside independently removable state law claims; as such, neither its reasoning nor its holding forecloses removal here.

In any event, as discussed in detail below, see infra Part III.C, even if this Court decides that Luther governs here (which it does not), Defendants respectfully submit that the decision in Luther is clearly irreconcilable with subsequent United States Supreme Court and other court of appeal and district court decisions.  Thus, it should be limited to the narrow question it addressed—whether cases asserting only Securities Act claims can be removed under CAFA—or reconsidered.

Second, Plaintiff argues that Section 77p(c) of the Securities Act—which, enacted as part of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), permits the removal of state law class actions asserting fraud in connection with securities traded on national stock exchanges, 15 U.S.C. § 77p(c) (hereinafter, "Section 77p(c)" or "SLUSA")—forecloses removal.  According to Plaintiff, when Congress passed SLUSA, it intended SLUSA to serve as the only basis on which a securities case may be removed to federal court, thereby foreclosing removal under CAFA even though CAFA was not enacted until seven years later.  Plaintiff's argument fails.

While Plaintiff quotes a number of cases out of context to make it sound like these cases bar removal on any grounds other than Section 77p(c) (Mot. 5:11-7:12), in fact, none of the cases Plaintiff cites even considers removability under CAFA, much less rejects it.  Rather, all of the cases Plaintiff cites stand for the now-settled proposition that Section 77p(c) is not a source of removal authority for Securities Act claims.  See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund, 138 S. Ct. 1061, 1075-76 (2018).[1]  Defendants did not remove under Section 77p(c)—they removed under CAFA—so those cases, and the point Plaintiff seeks to make in his Motion, are irrelevant. Even if Section 77p(c) does not provide for removal, removal is proper if a "separate removal

---

[1]  For example, in Cyan, the Court held that Section 77p(c) itself does not provide removal jurisdiction to defendants seeking to remove class actions alleging Securities Act claims; Cyan does not stand for the broad proposition that no Securities Act claims can be removed under any removal statute.  See Cyan, 138 S. Ct. at 1075-76.

3

provision" "'grants *additional* removal jurisdiction.'"  Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 107 (2d Cir. 2004) (citation omitted).  CAFA qualifies as a "separate removal provision" that provides just such a grant.  See infra Part III.D.

In short, because Plaintiff asserted state law claims that Plaintiff does not dispute are removable under CAFA, based on the principle that where one claim in an action is removable on diversity grounds, the entire action is removable, Defendants' removal of this Action was proper.  Neither Luther nor SLUSA requires remand here.  Therefore, the Court should deny Plaintiff's Motion in its entirety.

## II.    FACTUAL BACKGROUND

Defendant Ripple was incorporated in Delaware and is currently headquartered in San Francisco, California.  (Compl. ¶ 11.)  "Ripple provides one frictionless experience to send money globally using the power of blockchain.  By joining Ripple's growing, global network, financial institutions can process their customers' payments anywhere in the world instantly, reliably and cost-effectively. Banks and payment providers can use the digital asset XRP to further reduce their costs and access new markets."  (Ex. 1.)[2]  Defendant XRP II is a subsidiary of Ripple, also headquartered in San Francisco, California, and is licensed to engage in Virtual Currency Business Activity by the New York State Department of Financial Services.  (Compl. ¶ 12; Ex. 2.)  Defendant Bradley Garlinghouse is the CEO of Ripple.  (Compl. ¶ 13.)

Virtual currencies are generally defined as "'digital assets used as a medium of exchange.'"  Commodity Futures Trading Comm'n v. McDonnell, 287 F. Supp. 3d 213, 218 (E.D.N.Y. 2018).  "They are stored electronically in 'digital wallets' and exchanged over the internet through a direct peer-to-peer system" called a "blockchain."  Id.  As one court, concluding that a virtual currency was a "commodity" (not a security) within the regulatory purview of the Commodity Futures Trading Commission, described it:

> The "blockchain" serves as a digital signature to verify the exchange.  "The public nature of the decentralized ledger allows people to recognize the transfer of virtual currency from one user to another without requiring any central intermediary in which both users need

---

[2] All references to "Ex." refer to exhibits attached to the Declaration of Virginia F. Milstead, filed concurrently herewith.

**1**    to trust."  Some experts believe blockchain technology underlying

**2**    virtual currencies will serve to "enhance [future] economic efficiency" and have a "broad and lasting impact on global financial markets in payments, banking, securities settlement, title recording,

**3**    cyber security and trade reporting and analysis."

**4** Id.  (citations omitted).  The digital asset XRP, which Ripple customers consisting of banks and

**5** payment providers can use as a "reliable, on-demand option to source liquidity for cross-border

**6** payments" (Ex. 3), is built on open-source blockchain technology and is a form of virtual currency.

**7** In fact, both the U.S. Department of Justice and the Financial Crimes Enforcement Network, a

**8** bureau of the U.S. Department of Treasury, have previously concluded that XRP is a virtual

**9** currency subject to Bank Secrecy Act regulations.  (Ex. 4 ¶ 17.)

**10**      Plaintiff alleges Ripple created 100 billion XRP in 2013.  (Compl. ¶ 20.)  Plaintiff alleges

**11** that "Defendants sell XRP wholesale to larger investors and also sell significant quantities of XRP

**12** directly to the general public on cryptocurrency exchanges."  (Compl. ¶ 26.)  Such exchanges,

**13** which are independent from Defendants, are accessible online and therefore accessible to people

**14** throughout the United States and the world.  (See Ex. 5.)  According to Plaintiff, there were 32.49

**15** billion XRP in public circulation, changing hands through digital wallets on "cryptocurrency

**16** exchanges," as of June 30, 2015.  (Compl. ¶ 24.)

**17**      On January 5, 2018, Plaintiff allegedly purchased 650 XRP on a "cryptocurrency

**18** exchange" and sold that XRP two weeks later at a loss of $551.89.  (Compl. ¶¶ 26, 119-121.)

**19** Plaintiff does not allege that he lacked information about the nature of these transactions.

**20** Nevertheless, Plaintiff claims that he was somehow injured because Defendants were allegedly

**21** required to register XRP as a "security" with the Securities & Exchange Commission ("SEC") or

**22** California authorities but failed to do so. (Compl. ¶¶ 135, 142.)

**23**      On May 3, 2018, Plaintiff filed this putative class action in the Superior Court of California,

**24** San Francisco County, purportedly on behalf of "[a]ll persons or entities who purchased XRP from

**25** January 1, 2013 through the present."  (Compl. ¶ 122.)  Plaintiff alleges that Defendants violated

**26** Sections 5, 12(a)(1), and 15 of the Securities Act and Sections 25503, 25504, and 25110 of the

**27** California Corporations Code—federal and state statutes respectively governing the registration

**28** and sale of securities and imposing "control person" liability on violators of securities laws.

1  (Compl. ¶¶ 131-159.)   Plaintiff seeks, among other things, rescission of all XRP purchases,

2  damages, and a constructive trust over the proceeds of Defendants' alleged sales of XRP. (Compl.

3  ¶ VIII.)  On June 1, 2018, Defendants timely removed this Action to this Court pursuant to CAFA.

4  **III.    REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT**

5      **A.    Removal Is Proper Under CAFA**

6          CAFA amended the diversity jurisdiction statute by adding 28 U.S.C. § 1332(d) and created

7  a separate statutory provision authorizing the removal of class actions meeting the requirements of

8  Section 1332(d).  See 28 U.S.C. § 1453(b).  Under CAFA, a putative class action may be removed

9  to the appropriate federal district court if (1) the action purports to be a "class" action brought on

10 behalf of 100 or more members; (2) any member of a class of plaintiffs is a citizen of a state

11 different from any defendant; and (3) the amount in controversy exceeds $5 million.  See Dart

12 Cherokee, 135 S. Ct. at 552.  This Action meets each of CAFA's three requirements and, ***notably,***

13 ***Plaintiff does not dispute in his Motion that every one of these three requirements is met***.

14      ***Class exceeds 100 members***.  First, this is an alleged class action brought on behalf of over

15 100 members.  Plaintiff purports to assert claims on behalf of a "class" consisting of "thousands of

16 Class members." (Compl. ¶¶ 122, 124.)  That well exceeds the requirements of CAFA.

17      ***Minimal Diversity***.  Second, under CAFA, minimal diversity of citizenship exists where

18 "any member of a class of plaintiffs is a citizen of a State different from any defendant" or "any

19 member of a class of plaintiffs is a . . . citizen or subject of a foreign state and any defendant is a

20 citizen of a State." 28 U.S.C. § 1332(d)(2).  On the one hand, each of the Defendants is allegedly a

21 citizen of California (Compl. ¶¶ 11-13), and on the other, there are members of the putative class—

22 defined as "[a]ll persons or entities who purchased XRP" since January 1, 2013 without any

23 geographic limitation, who are citizens of states other than California and citizens of foreign

24 countries (Compl. ¶ 122).[3]  Given these allegations, members of the putative class are citizens of

25

---

26 [3] The Complaint further alleges that Defendants have sold XRP to putative class members on
   "cryptocurrency exchanges," which are accessible on the internet and therefore throughout the
27 United States and the world.  (Compl. ¶¶ 26, 34.)  Plaintiff also alleges that Defendants "made use
   of means or instruments of transportation or communication in interstate commerce or of the
28 mails" in purportedly selling XRP.  (Compl. ¶ 132.)  Such allegations further support minimal
   diversity here.

1   states and countries different from Defendants.  See, e.g., Broadway Grill, Inc. v. Visa Inc., 856

2   F.3d 1274, 1276-77 (9th Cir. 2017) (concluding that minimal diversity was satisfied when class

3   definition, as pleaded, included a nationwide class and many non-citizens of California); Rossetti v.

4   Stearn's Prods., Inc., 2016 WL 3277295, at *1-2 (C.D. Cal. June 6, 2016) (same).

5       ***Amount in Controversy***.   Third, this Action meets CAFA's amount-in-controversy

6   requirement of $5 million.  28 U.S.C. § 1332(d)(6).  Among other things, Plaintiff seeks the

7   rescission of Defendants' alleged sales of XRP to putative class members.  (Compl. ¶ VIII.4.)

8   Plaintiff alleges that in 2017 alone, Defendants received "over $342.8 million through XRP sales."

9   (Compl. ¶ 26.)  If all such sales were rescinded, the amount in controversy would exceed $5

10  million.  While Defendants strongly deny that Plaintiff or any putative class members are entitled

11  to recover any amount (or any other relief), Plaintiff plainly seeks to recover an aggregate amount

12  over $5 million.[4]

13      ***Exceptions***.   None of the exceptions to removal set forth in CAFA applies to bar removal

14  here, and Plaintiff does not contend otherwise.  This Action does not (i) involve a "covered

15  security," as defined by 15 U.S.C. § 77p(f)(3); (ii) relate to the internal affairs or governance of a

16  corporation and arise under the laws of the state in which such corporation was formed; or (iii)

17  relate to the rights, duties, and obligations relating to or created by or pursuant to any security.  See

18  28 U.S.C. § 1453(d)(1)-(3).

19      This Action clearly satisfies the requirements of CAFA.  Plaintiff's argument that the

20  removal bar in Section 22(a) of the Securities Act and the Ninth Circuit's decision in Luther

21  nevertheless preclude removal fails.  (Mot. 4:8-12.)

22      **B.   Section 22(a) And Luther Do Not Bar Removal Under CAFA**

23      Section 22(a) provides for concurrent jurisdiction in state and federal courts over alleged

24  violations of the Securities Act.  See 15 U.S.C. § 77v(a).  It further provides, "Except as provided

25  in section 77p(c) of this title, no case arising under [the Securities Act] and brought in any State

---

26  [4] Plaintiff also seeks a constructive trust over the proceeds of Defendants' alleged sales of XRP,
27  which can be considered when determining whether the amount in controversy exceeds $5 million.
    (Compl. ¶ VIII.6.); see Holt v. Noble House Hotels & Resort, Ltd., 2018 WL 539176, at *4 (S.D.
28  Cal. Jan. 23, 2018) (considering amount over which plaintiff was seeking a constructive trust and
    disgorgement in assessing amount in controversy.)

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND          CASE NO. 4:18-CV-03286-PJH

1  court of competent jurisdiction shall be removed to any court of the United States."  15 U.S.C.

2  § 77v(a).

3      In <u>Luther</u>, the defendants removed pursuant to CAFA an action in which the plaintiff

4  asserted only Securities Act claims.  <u>Luther</u>, 533 F.3d at 1033.  In affirming the district court's

5  order remanding the action, the court cited the removal limitation in Section 22(a) and held that a

6  class action brought in state court alleging ***only*** violations of the Securities Act was not removable

7  even if it otherwise met the requirements of CAFA.  <u>See id.</u> at 1033, 1034.  The court was not

8  asked to address, and did not address, a situation where, as here, independently removable state law

9  claims are joined with Securities Act claims.  <u>See id.</u>  All <u>Luther</u> considered was whether cases

10  alleging only Securities Act claims can be removed under CAFA.

11      Plaintiff responds to the key difference between this case and <u>Luther</u> by arguing that

12  Section 22(a) "explicitly bars removal of ***all cases*** arising under the Securities Act" and "***not*** just

13  Securities Act claims."  (Mot. 5:6-10.)  There is no authority to support Plaintiff's overbroad

14  reading of <u>Luther</u>.  The cases Plaintiff cites in support of his argument addressed only Securities

15  Act claims that the defendants sought to remove under SLUSA; they had nothing to do with

16  CAFA, and they did not involve independently removable state law claims.  <u>See Rajasekaran v.</u>

17  <u>CytRx Corp.</u>, 2014 WL 4330787, at *1 (C.D. Cal. Aug. 21, 2014) (Mot. 5:13-15); <u>Cervantes v.</u>

18  <u>Dickerson</u>, 2015 WL 6163573, at *1 (N.D. Cal. Oct. 21, 2015) (Mot. 5:19-22).[5]

19      In fact, <u>Luther</u> directly contradicts Plaintiff's conclusion that the removal bar in Section

20  22(a) applies to state law claims.  The basis for <u>Luther's</u> holding that Section 22(a) bars removal

21  notwithstanding the later-enacted CAFA was the "principle of statutory construction that a statute

22  dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute

23  covering a more generalized spectrum."  <u>Luther</u>, 533 F.3d at 1034.  The <u>Luther</u> court concluded

24  that Section 22(a) was "more specific" than CAFA because it "applies ***only*** to ***claims*** arising under

25  the Securities Act," whereas CAFA "applies to a 'generalized spectrum'" of class actions.  <u>Id.</u>

26

27  _____
[5] Plaintiff cites no authority to support his contention that his California Corporations Code claims
arise under the Securities Act.  (Mot. 5 n.1.)  Plaintiff's claims arise from the same alleged conduct,
28  but Plaintiff chose to assert separate claims under both state and federal law.  (Compl. ¶¶ 131-159.)
As such, his claims arise under both state and federal law.

1  (emphasis added).  Thus, Section 22(a) cannot be read to bar removal of the state law claims

2  without squarely contradicting the "narrow, precise, and specific" interpretation of Section 22(a) on

3  which <u>Luther</u> was premised.  <u>Id.</u>  Accordingly, <u>Luther</u> itself defeats any conclusion that Section

4  22(a) bars removal of state law claims or "trumps" CAFA even when removable state law claims

5  are asserted.

6       While <u>Luther</u> did not directly address the question of whether actions asserting both state

7  law claims and Securities Act claims were removable under CAFA, the presence of the state law

8  claims in this case is sufficient to justify removal.  The general rule with respect to diversity

9  jurisdiction, of which CAFA is a species, is that the federal court's jurisdiction over one claim

10  confers jurisdiction over the entire action.  As the United States Supreme Court in <u>Exxon Mobil</u>,

11  545 U.S. at 559, explained:

12       When the well-pleaded complaint contains at least one claim that
satisfies the amount-in-controversy requirement, and there are no

13  other relevant jurisdictional defects, the district court, beyond all
question, has original jurisdiction over that claim.  The presence of

14  other claims in the complaint, over which the district court may lack
original jurisdiction, is of no moment.  If the court has original

15  jurisdiction over a single claim in the complaint, it has original
jurisdiction over a "civil action."

16

17  Thus, absent an exception, if any claim in an action is removable, the entire action is removable.

18  This rule applies equally with respect to removals under CAFA involving both removable and non-

19  removable claims.  <u>See</u> <u>F5 Capital</u>, 856 F.3d at 82 (concluding that class action was properly

20  removed under CAFA and that the federal court could exercise supplemental jurisdiction over state

21  law derivative claims that were otherwise not removable); <u>Brown v. Mortg. Elec. Registration Sys.,</u>

22  <u>Inc.</u>, 738 F.3d 926, 933 (8th Cir. 2013) (affirming removal under CAFA and district court's

23  exercise of supplemental jurisdiction over non-removable state law claims).  As explained below,

24  the interplay between CAFA and other removal statutes, as well as the plain language of CAFA,

25  demonstrate that this general rule also applies to removal under CAFA of actions asserting both

26  removable state law and otherwise non-removable Securities Act claims.

27       **1.**     **Background Regarding Removal Of Actions That Joined Removable
And Non-Removable Claims Prior To CAFA**

28  To fully understand CAFA's scope, and the fundamental defect in Plaintiff's reliance on

9

1  <u>Luther</u>, it is useful to review briefly the state of the law prior to CAFA.  Prior to the enactment of

2  CAFA, whether an action asserting a non-removable federal claim, such as a Securities Act claim,

3  could nevertheless be removed because the federal court had diversity jurisdiction over a separate

4  state law claim depended on whether the general removal statute, 28 U.S.C. § 1441, allowed for

5  removal in such circumstance.  There were two subsections of Section 1441 that could potentially

6  allow for removal: Section 1441(a) or Section 1441(c).

7      Section 1441(a) provides:

8          Except as otherwise expressly provided by Act of Congress, any civil
   action brought in State court of which the district courts of the United
9          States have original jurisdiction, may be removed by the defendant or
   the defendants, to the district court of the United States for the
10         district and divisions embracing the place where such action is
   pending.

11

12 28 U.S.C. § 1441(a).  Under Section 1441(a), if an action could have been filed in federal court

13 originally—such as an action over which the federal court has diversity jurisdiction—it can be

14 removed to federal court.  <u>See</u> <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 163 (1997)

15 ("The propriety of removal thus depends on whether the case originally could have been filed in

16 federal court.").

17     However, prior to CAFA, courts concluded that Section 1441(a) did not authorize removal

18 of an action that included both state law claims and otherwise non-removable federal claims—such

19 as Securities Act claims or claims arising under the Federal Employers' Liability Act or Jones Act,

20 28 U.S.C. § 1445(a), (b)—even if the federal court had original diversity jurisdiction.  Courts

21 reasoned that the clause in Section 1441(a), "[e]xcept as otherwise expressly provided by Act of

22 Congress," referred to anti-removal statutes such as Section 22(a) and created an exception to the

23 general rule that entire actions over which the federal court had original jurisdiction could be

24 removed.  <u>See</u> <u>U.S. Indus. v. Gregg</u>, 348 F. Supp. 1004, 1015 (D. Del. 1972), <u>rev'd on other</u>

25 <u>grounds</u>, 540 F.2d 142 (3d Cir. 1976) (concluding that action over which court had diversity

26 jurisdiction asserting Securities Act claims was not removable under Section 1441(a)); <u>Farmers &</u>

27 <u>Merchs. Bank v. Hamilton Hotel Partners of Jacksonville Ltd. P'ship</u>, 702 F. Supp. 1417, 1419

28 (W.D. Ark. 1988) (same).  Because Section 1441(a)'s right of removal was expressly made subject

to exceptions in other statutes, and Section 22(a) created such an exception to the right of removal

1    granted by Section 1441(a), Section 1441(a) did not permit removal of the action.  See Gregg, 540

2    F. Supp. at 1015.

3         In contrast to how courts treated Section 1441(a), courts concluded that removal *was*

4    permissible under Section 1441(c).  Section 1441(c) originally provided: "[w]henever a separate

5    and independent claim or cause of action, which would be removable if sued upon alone, is joined

6    with one or more otherwise nonremovable claims or causes of action, the entire case may be

7    removed."  Spalo v. Union Pac. R.R. Co., 2017 WL 2908775, at *1 (N.D. Ill. July 7, 2017)

8    (alteration in original) (citation omitted).  Under Section 1441(c), so long as the state law claim

9    over which the federal court had diversity jurisdiction was "separate and independent" from the

10    non-removable Securities Act claim, the entire action, including the Securities Act claim, could be

11    removed.  See Gregg, 348 F. Supp. at 1015-16; Farmers & Merchs. Bank, 702 F. Supp. at 1419-20.

12         Courts reasoned that, unlike Section 1441(a), Section 1441(c) did not contain the "[e]xcept

13    as otherwise expressly provided by Act of Congress" language.  See Gregg, 348 F. Supp. at 1015-

14    16; see also Gonsalves v. Amoco Shipping Co., 733 F.2d 1020, 1022 (2d Cir. 1984) (noting lack of

15    exception language in Section 1441(c) and permitting removal when non-removable Jones Act

16    claim was joined with removable separate and independent claim).  Thus, as one court explained:

> 17    Section 22(a) restricts the grant of general removal jurisdiction found
> 18    in Subsection (a).  However, in a case where a separate and
>    independent claim, which would be removable if sued upon alone, is
> 19    joined with one or more otherwise nonremovable claims, whether
>    made non-removable by Section 22(a) or otherwise, Subsection (c) is
> 20    the governing provision and authorizes removal of the entire case.

21    Gregg, 348 F. Supp. at 1015-16; see also Emrich v. Touche Ross & Co., 846 F.2d 1190, 1197 (9th

22    Cir. 1988) (concluding that Securities Act claims were not removable under Section 1441(a) even

23    if joined with other federal claims, but that they could be removable under Section 1441(c)).

24         In 1990, Congress amended Section 1441(c) to eliminate "its application to cases within the

25    district court's diversity jurisdiction" and instead permitted removal whenever "a separate and

26    independent claim or cause of action within [federal question jurisdiction] is joined with one or

27    more otherwise nonremovable causes of action."  Spalo, 2017 WL 2908775, at *1.  The effect of

28    this amendment was that Section 1441(c) no longer authorized removal based on diversity

   jurisdiction of an action that included both non-removable federal claims and state law claims.  Id.

1    Section 1441(a) became the sole statutory authority for removal based on diversity jurisdiction.

2    Because, due to its "[e]xcept as otherwise expressly provided by Act of Congress" language,

3    Section 1441(a) did not permit removal of non-removable claims joined with removable claims,

4    diversity jurisdiction could no longer be invoked to remove actions with both removable and non-

5    removable claims.  Id. at *2; see also WorldCom, Inc., 368 F.3d at 105 n.18 (explaining that

6    changes to Section 1441(c) meant that "the existence of a claim that meets the requirements for

7    diversity jurisdiction is no longer sufficient to implicate Section 1441(c)").

8            **2.      Congress Enacted CAFA But Did Not Include The "Except As**
             **Otherwise Expressly Provided By Act Of Congress" Language,**
9            **Distinguishing CAFA From The General Removal Statute**

10           In 2005, Congress—aware of this history—enacted CAFA with the express intent to

11   expand diversity jurisdiction and removal based on diversity jurisdiction for certain types of class

12   actions.  See Miss. ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 169 (2014) ("[W]e presume

13   that 'Congress is aware of existing law when it passes legislation.'") (citation omitted); see also

14   Allen v. Boeing, 784 F.3d 625, 633 (9th Cir. 2015) (remarking on "Congress's overall intent to

15   strongly favor the exercise of federal diversity jurisdiction over class actions").  If Congress wished

16   to continue to ensure that diversity jurisdiction, even in its CAFA form, was not available to

17   remove actions joining removable and nonremovable claims, all it needed to provide in CAFA was,

18   "except as otherwise expressly provided by Act of Congress"—just like Section 1441(a).  See New

19   Jersey Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4, 581 F. Supp. 2d 581,

20   587 (S.D.N.Y. 2008) (concluding that Securities Act claims are removable under CAFA and

21   noting, "[h]ad Congress wanted to treat CAFA like the general removal statute of § 1441(a) and

22   leave intact other statutory regimes, it could easily have done so").

23           On the other hand, when enacting CAFA, Congress also knew how to provide for removal

24   of an entire action, even if the action included otherwise non-removable claims—by omitting the

25   "except as otherwise expressly provided by Act of Congress" language, which courts would view

26   as an indication that anti-removal statutes, such as Section 22(a), did ***not*** prevent removal.  See

27   United States v. Providence J. Co., 485 U.S. 693, 704-05 (1988) (observing that when two statutes

28   included "[e]xcept as otherwise authorized by law," but that "by way of vivid contrast," the third

1   did not, the third statute provided for no exception) (citation omitted); see also WorldCom, 368

2   F.3d at 106 (holding that Securities Act claims were removable under 28 U.S.C. § 1452(a) as

3   "related to" bankruptcy proceedings because, unlike Section 1441(a), Section 1452(a) contained no

4   "[e]xcept as otherwise expressly provided by Act of Congress" language) (alteration in original)

5   (citation omitted); Cobalt Partners, LP v. Sunedison, Inc., 2016 WL 4488181, at *6 (N.D. Cal.

6   Aug. 26, 2016) (same).

7          Against this backdrop, Congress enacted CAFA without the "except as otherwise expressly

8   provided by Act of Congress" language.  See 28 U.S.C. § 1453(b) ("A class action may be

9   removed to a district court of the United States in accordance with section 1446 . . . .").  Even with

10  respect to the three enumerated exceptions to CAFA removal expressly set forth in Section

11  1453(d), Congress applied the exceptions only if the class action involved "solely" the matters

12  within the enumerated exceptions, suggesting that even these expressly non-removable claims

13  would not prevent removal of an otherwise removable class action.  See 28 U.S.C. § 1453(d); see

14  also Tuttle v. Sky Bell Asset Mgmt., LLC, 2011 WL 208060, at *5 (N.D. Cal. Jan. 21, 2011) ("'If a

15  complaint contains a claim implicating one of CAFA's exceptions, *but also involves other non-*

16  *excepted claims*, the case should remain in federal court.'") (citation omitted).  Thus, Congress

17  intended for entire class actions falling within the expanded grant of diversity jurisdiction,

18  including those with otherwise non-removable claims, to be removable.

19         This reasoning is confirmed by case law interpreting the interplay between Section 22(a)

20  and other removal statutes.  For example, in WorldCom the court concluded that Securities Act

21  claims were removable, notwithstanding Section 22(a)'s removal bar, pursuant to "related to"

22  bankruptcy jurisdiction in 28 U.S.C. § 1452.  WorldCom, 368 F.3d at 106. The court reasoned:

23              [W]hen an anti-removal provision such as Section 22(a) is invoked,
                the threshold question is whether removal is being effectuated by
24              way of the general removal statute, 28 U.S.C. § 1441(a), or by way
                of a separate removal provision that "grants *additional* removal
25              jurisdiction in a class of cases which would not otherwise be
                removable under the prior grant of authority."  If removal is being
26              effectuated through a provision that confers *additional* removal
                jurisdiction, and that provision contains no exception for
27              nonremovable federal claims, the provision should be given full
                effect.
28

    Id. at 107 (citation omitted); see also Pac. Life Ins. Co. v. J.P. Morgan Chase & Co., 2003 WL

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND                    CASE NO. 4:18-CV-03286-PJH

22025158, at *2 (C.D. Cal. June 30, 2003) ("Section 22(a) proscribes removal based on federal question jurisdiction under 28 U.S.C. section 1441(a), but does not prevent removal based on other grounds."). Likewise, in <u>FDIC v. Countrywide Financial Corp.</u>, 2012 WL 12897152, at *1 (C.D. Cal. Mar. 20, 2012) (Pfaelzer, J.), the same district judge who authored the decision affirmed by <u>Luther</u> concluded that the grant of federal jurisdiction over actions to which the Federal Deposit Insurance Corporation was a party made an action asserting Securities Act claims removable under Section 1441(b), which at that time provided for removal based on claims arising under federal law. The court reasoned that Section 1441(b) "trump[ed]" the removal bar in Section 22(a) because Section 1441(b) did not then contain exception language like Section 1441(a).  <u>Id.</u>

Indeed, if the limitations in Section 1441(a) or anti-removal statutes govern removal of class actions under CAFA, Section 1453 would become superfluous.  <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) (noting rule of statutory interpretation against treating "statutory terms as surplusage") (citation omitted).  Congress could have merely amended Section 1332 to expand the definition of original diversity jurisdiction, <u>see</u> 28 U.S.C. § 1332(d), and allowed Section 1441(a) to provide the sole authority for removal.  That it did not do so demonstrates that Congress intended the removal authority under Section 1453 to be broader than that under Section 1441(a). <u>See</u> <u>Passarella v. Ginn Co.</u>, 637 F. Supp. 2d 353, 355 (D.S.C. 2009) (concluding that CAFA "trumped" removal bar in Interstate Land Sales Full Disclosure Act ("ILSA"); observing that, in contrast to Section 1441(a), "[e]xcept as otherwise provided by Act of Congress" was not included in Section 1453 and concluding that Section 1453 should not "be treated as dealing only with a subset of removable actions spelled out in" Section 1441(a)).

Likewise, if, as Plaintiff contends, Section 22(a)'s removal bar trumps not only Section 1441(a) but also Section 1453, "the key words '[e]xcept as otherwise expressly provided by Act of Congress' in Section 1441(a) would be surplusage."  <u>WorldCom</u>, 368 F.3d at 106.  In other words, if the Court concludes that "a nonremoval provision such as Section 22(a) prevents removal under *both* Section 1441(a) and Section [1453], notwithstanding the phrase "[e]xcept as otherwise expressly provided by Act of Congress" in Section 1441(a), that phrase in the general removal statute would serve no apparent purpose."  <u>Id.</u>

14

1    What is more, Section 1441(c) was amended again in 2012 to provide that, upon removal of

2 an action that includes both claims arising under federal law and nonremovable claims, the "district

3 court shall sever" all nonremovable claims and remand "the severed claims to the State court from

4 which the action was removed."  28 U.S.C. § 1441(c)(2); see also Spalo, 2017 WL 2908775, at *1.

5 Because removal here is not premised on Section 1441(c), this severance procedure does not apply

6 here.  However, it is noteworthy that Congress did not simultaneously amend Section 1453 to

7 include a similar procedure for non-removable claims joined with claims removable under CAFA.

8 That Congress chose to include a severance and remand procedure for non-removable claims

9 removed under Section 1441(c), but did not include the same language in Section 1453, signals that

10 Congress did not intend such a procedure to apply to Section 1453.  See Russello v. United States,

11 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute

12 but omits it in another section of the same Act, it is generally presumed that Congress acts

13 intentionally and purposely in the disparate inclusion or exclusion.") (alteration in original)

14 (citation omitted).

15        **C.    Luther Requires Limitation Or Reconsideration**

16    Luther is not binding on this Court because, in the instant case, Plaintiff asserts both

17 Securities Act and state law claims that are undeniably removable under CAFA, a fact pattern not

18 considered in Luther.  However, even if the Court concludes that the holding in Luther applies,

19 Defendants respectfully submit that, in light of subsequent developments, Luther should be limited

20 to its facts and not expanded to bar the removal of actions asserting both Securities Act and state

21 law claims, or it should be reconsidered. Indeed, the author of the California district court opinion

22 affirmed by the Ninth Circuit in Luther, the Honorable Mariana Pfaelzer, observed in a later case,

23 "Defendants appear to have nonfrivolous arguments for a change in law due to post-Luther

24 developments."  Pub. Emps. Ret. Sys. of Miss. v. Morgan Stanley, 605 F. Supp. 2d 1073, 1075 n.1

25 (C.D. Cal. 2009).  Such arguments are equally present with respect to this Action.

26        **1.    Luther Is Irreconcilable With Dart Cherokee**

27    The Ninth Circuit has recognized that its own decisions are not binding on district courts if

28 their "reasoning or theory" is "clearly irreconcilable" with subsequently decided United States

1   Supreme Court authority.  <u>Miller v. Gammie</u>, 335 F.3d 889, 893 (9th Cir. 2003).  Such is the case

2   with <u>Luther</u>.  In reaching its holding, <u>Luther</u> relied on the general rules that "removal statutes are

3   strictly construed against removal," and "any doubt is resolved against removability."  <u>Luther</u>, 533

4   F.3d at 1034.  However, in <u>Dart Cherokee</u>, 135 S. Ct. at 554, the Supreme Court concluded that

5   "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate

6   adjudication of certain class actions in federal court."  On the contrary, CAFA's "provisions should

7   be read broadly, with a strong preference that interstate class actions should be heard in a federal

8   court if properly removed by any defendant."  <u>Id.</u>  (citation omitted).  Accordingly, <u>Luther</u>'s strict

9   construction against removal to resolve the perceived conflict between Section 22(a)'s removal bar

10  and CAFA cannot be squared with the Supreme Court's express instructions in the more recently

11  decided <u>Dart Cherokee</u> "to interpret CAFA's provisions under section 1332 broadly in favor of

12  removal."  <u>Jordan v. Nationstar Mortg. LLC</u>, 781 F.3d 1178, 1184 (9th Cir. 2015) (reversing order

13  of district court, "[i]n light of the Supreme Court's clear statement in <u>Dart Cherokee</u> that Congress

14  intended for no antiremoval presumption to attend CAFA cases" and rejecting <u>Luther</u>'s strict

15  construction of CAFA against removal because it was inconsistent with <u>Dart Cherokee</u>).

16          Likewise, <u>Luther</u>'s interpretation of CAFA as a "general grant of the right of removal of

17  high-dollar class actions" that excludes nationwide class actions asserting claims under the

18  Securities Act, <u>Luther</u>, 533 F.3d at 1034, cannot be squared with <u>Dart Cherokee</u>'s characterization

19  of CAFA as a tool to ensure federal consideration of "interstate cases of national importance," <u>Dart</u>

20  <u>Cherokee</u>, 135 S. Ct. at 554 (citation omitted).  In fact, other courts have concluded that application

21  of CAFA to interstate securities class actions of national importance is essential to fulfill the

22  purposes of CAFA.  <u>See</u> <u>HarborView</u>, 581 F. Supp. 2d at 587-88 (concluding that "CAFA

23  overrides the Securities Act's anti-removal provision because this case involves exactly the type of

24  case CAFA was concerned about—a large, non-local securities class action dealing with a matter

25  of national importance, the mortgage-backed securities crisis that is currently wreaking havoc with

26  the national and international economy").  The ruling in <u>Dart Cherokee</u> thus "undercut[s] the

27  theory or reasoning underlying [<u>Luther</u>] in such a way that [<u>Luther</u> and <u>Dart Cherokee</u>] are clearly

28  irreconcilable."  <u>Jordan</u>, 781 F.3d at 1183 n.2 (citation omitted); <u>see also</u> 16 Moore's Federal

16

1   Practice - Civil § 107.91[1][b] (2018) (observing that "[g]iven the Supreme Court's assertion that

2   no antiremoval presumption applies to cases under CAFA," the decision in <u>Luther</u> was likely

3   incorrect).  On this basis alone, <u>Luther</u> should be limited and reconsidered.

**2.      Luther's Conclusion That Section 22(a) Is More Specific Than CAFA Has Been Rejected By Subsequent Appeals And District Court Authority**

6   The rationale for <u>Luther</u>'s conclusion that Section 22(a)'s removal bar trumps CAFA

7   removal of Securities Act claims is that the Securities Act, including Section 22(a)'s removal bar,

8   is a "more specific statute" than the later-enacted CAFA statute.  <u>Luther</u>, 533 F.3d at 1034 ("Here,

9   the Securities Act of 1933 is the more specific statute; it applies to the narrow subject of securities

10  cases and § 22(a) more precisely applies only to claims arising under the Securities Act of 1933.

11  CAFA, on the other hand, applies to a 'generalized spectrum' of class actions.") (citation omitted).

12  Subsequent court of appeals and district court cases, however, have determined that such reasoning

13  is flawed.

14  Shortly after the Ninth Circuit decided <u>Luther</u>, the Court of Appeals for the Seventh Circuit

15  considered the central legal question in <u>Luther</u>—the removability of Securities Act claims pursuant

16  to CAFA—and it concluded that such actions *are* removable.  <u>See Katz v. Gerardi</u>, 552 F.3d 558

17  (7th Cir. 2009).  In an opinion authored by Judge Easterbrook, the court began by noting that

18  "[u]sually the older law"—Section 22(a)—"yields to the newer"—CAFA.  <u>Id.</u> at 561.  Discussing

19  the reasoning in <u>Luther</u>, the court noted that the "[t]he canon favoring preservation of specific

20  statutes arguably affected by newer, but more general, statutes works when one statute is a subset

21  of the other."  <u>Id.</u>  However, "§ 22(a) of the [Securities] Act is not a subset" of CAFA.  <u>Id.</u>  The

22  court reasoned:

23          Section 22(a) covers only securities actions, but it includes all
            securities actions—single-investor suits as well as class actions,
24          small class actions as well as large multi-state ones.  [CAFA], by
            contrast, covers only large, multi-state class actions.  Is the
25          [Securities] Act more specific because it deals only with securities
            law, or is [CAFA] more specific because it deals only with
26          nationwide class actions?  There is no answer to such a question,
            which means that the canon favoring the specific law over the
27          general one won't solve our problem.

28  <u>Id.</u> at 561-62.  Like the Seventh Circuit, other courts have rejected the view that Section 22(a) is a

1   more specific statute.  <u>See, e.g.</u>, <u>WorldCom</u>, 368 F.3d at 101-02 (rejecting argument that Section

2   22(a) is more specific than Section 1452, which permits removal of actions related to bankruptcy

3   proceedings, concluding, "Section 22(a) does not cover only a subset of the universe of claims that

4   are 'related to' a bankruptcy case; rather it applies to numerous claims that are in no way 'related

5   to' a bankruptcy, just as Section 1452(a) applies to numerous claims that are not brought under the

6   [Securities] Act"); <u>Passarella</u>, 637 F. Supp. 2d at 354 (citing <u>Katz</u> and concluding that the "cannon

7   of statutory construction" on which <u>Luther</u> relied "is not particularly useful" in determining

8   whether CAFA or removal bar in ILSA is more specific); <u>HarborView</u>, 581 F. Supp. 2d at 586

9   (rejecting <u>Luther's</u> conclusion that Section 22(a) was more specific than CAFA because both

10  statutes were "specific and narrowly-tailored").  As Professor Joseph M. McLaughlin observed in

11  his treatise on class actions, <u>Luther</u> "offered no reasons to support its assertion that the [Securities]

12  Act was [] more specific" than CAFA.  2 McLaughlin on Class Actions § 12:6 (14th ed. 2017).

13         Because <u>Luther</u> failed to demonstrate that the Securities Act was more specific than CAFA,

14  <u>Luther</u> failed to establish the predicate of the "basic principle of statutory construction that a statute

15  dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute

16  covering a more generalized spectrum."  <u>Luther</u>, 533 F.3d at 1034 (citation omitted).  As such, the

17  reasoning underpinning <u>Luther</u> is flawed.

18         **3.    <u>Luther</u> Failed To Consider The Express Exceptions To CAFA Removal**

19         Subsequent authorities have also recognized that <u>Luther</u>'s conclusion that Section 22(a)

20  provides an "express exception to removal" contradicts the plain language of CAFA.  <u>Luther</u>, 533

21  F.3d at 1034.  To begin with, as noted above, unlike Section 1441(a), which permits removal

22  "[e]xcept as otherwise expressly provided by Act of Congress," 28 U.S.C. § 1441(a), CAFA's

23  removal statute contains no such general exception, 28 U.S.C. § 1453.  This alone demonstrates

24  that Congress did not intend Section 22(a) to provide an exception to CAFA removal—a point

25  <u>Luther</u> did not address.  <u>See</u> <u>HarborView</u>, 581 F. Supp. 2d at 587 ("Had Congress wanted to treat

26  CAFA like the general removal statute of § 1441(a) and leave intact other statutory regimes, it

27  could have easily done so."); <u>Passarella</u>, 637 F. Supp. 2d at 355 (observing that Section 1453 does

28  not include a "qualification on the ability to remove an action").

1    Additionally, the express language of CAFA instructs how CAFA "applies to corporate and

2  securities actions."   Katz, 552 F.3d at 562.  CAFA contains specific, enumerated exceptions to

3  removal jurisdiction that address certain securities class actions—none of which applies here—

4  actions "concerning a covered security," those relating to the internal affairs of a corporation, or

5  those relating to the rights, duties, and obligations relating to or created by or pursuant to any

6  security.  Id.; see also 28 U.S.C. § 1453(d)(1)-(3).  "This [list of exceptions] tells us all we need to

7  know."  Katz, 552 F.3d at 562.  Claims falling within the exceptions are not removable; "[o]ther

8  securities class actions are removable if they meet the requirements of" CAFA.  Id.  In other words,

9  the presence of these narrow, enumerated exceptions belies any assertion that other, unstated

10  exceptions also exist.  See Blausey v. United States Tr., 552 F.3d 1124, 1133 (9th Cir. 2009) ("The

11  general rule of statutory construction is that the enumeration of specific exclusions from the

12  operation of a statute is an indication that the statute should apply to all cases not specifically

13  excluded.").  To read CAFA's categorical right of removal as subject to an unstated, overarching

14  exception for actions that include claims arising under the Securities Act "would be to make most

15  of § 1453(d) pointless."  Katz, 552 F.3d at 562.

16    Other courts considering the interplay between CAFA and antiremoval statutes have

17  reached the same conclusion.  See Passarella, 637 F. Supp. 2d at 355 ("CAFA is the more recently

18  enacted statute; it provides a right to removal for qualifying class actions; and it spells out three

19  exceptions to its grant of a right of removal. . . .  [T]here is little guesswork in surmising that

20  Congress intends some substantial revisions when it grants a categorical right to removal and

21  provides for only limited, specific exceptions"); HarborView, 581 F. Supp. 2d at 587 ("CAFA's

22  sole limitations are those exclusively listed in the defined exceptions . . .").  Post-Luther

23  developments have called into question the validity of its holding.  Therefore, that holding should

24  be limited or reconsidered, and this nationwide class action should be removable under CAFA.

25    **D.    SLUSA Does Not Preclude Removal**

26    Plaintiff's Motion addresses none of the arguments above.  Instead, Plaintiff's argument

27  hinges entirely on the contention that, regardless of the plain language or intent of the later-enacted

28  CAFA and despite the existence of state law claims indisputably removable under CAFA, this

19

1    Action is not removable under CAFA because Section 22(a) allows removal only under SLUSA—

2    "as provided in section 77p(c)."  (Mot. 5:4.)  Section 77p(c) provides that "[a]ny covered class

3    action brought in State court involving a covered security, as set forth in subsection (b), shall be

4    removable to the Federal district court for the district in which the action is pending, and shall be

5    subject to subsection (b)."  15 U.S.C. § 77p(c).  Subsection (b), in turn, provides for preemption

6    and dismissal of "class action[s] based upon the statutory or common law of any State" that assert

7    claims for false statements or deceptive devices in sales of securities.  15 U.S.C. § 77p(b).  Section

8    77p(c) thus authorizes removal of state law class actions alleging fraud in connection with

9    "covered securities" "so that a federal court can dismiss them."  Cyan, 138 S. Ct. at 1069. Plaintiff

10   argues that Section 77p(c) provides the only exception to Section 22(a)'s removal bar, and because

11   removal is not proper pursuant to Section 77p(c), the Court must remand the action.  (Mot. 6:3-19.)

12   Plaintiff is wrong.

13         Far from Section 77p(c) foreclosing removal under CAFA, the express purpose of CAFA—

14   enacted several years after SLUSA—is to permit removal of those nationwide class actions Section

15   77p(c) does not address.  An action is removable under Section 77p(c) only if it involves a

16   "covered security"—that is, a security traded on a national exchange, 15 U.S.C. § 77p(f)(3)—while

17   CAFA provides an express exception to removal for cases solely involving "covered securities."

18   28 U.S.C. § 1453(d)(1).  Thus, "'any case to which SLUSA applies, CAFA expressly excepts from

19   its gambit.'"  Appert v. Morgan Stanley Dean Witter, Inc., 673 F.3d 609, 617 (7th Cir. 2012)

20   (concluding that removal was improper under Section 77p(c) but was proper under CAFA)

21   (citation omitted).  CAFA, in turn, permits removal of nationwide securities class actions meeting

22   its requirements that were not already removable under Section 77p(c), such as those, like this

23   Action, involving alleged *non-covered* securities—purported securities not traded on a national

24   exchange.  See Estate of Pew v. Cardarelli, 527 F.3d 25, 32 (2d Cir. 2008) (a "[r]eview of SLUSA

25   and CAFA confirms an overall design to assure that the federal courts are available for all

26   securities cases that have national impact"); HarborView, 581 F. Supp. 2d at 587 (same); Katz, 552

27   F.3d at 562 (holding that any action not falling within CAFA's exceptions may be removed);

28   Tuttle, 2011 WL 208060, at *3 (concluding that action not involving "covered security" was not

20

1   removable under SLUSA, but that it was removable under CAFA).[6]

2       Courts have expressly rejected Plaintiff's contention that Section 77p(c) is the "lone

3   exception" to Section 22(a).   (Mot. 5:15.)   In WorldCom, for example, the court considered

4   whether Section 22(a) and SLUSA precluded removal of Securities Act claims pursuant to "related

5   to" bankruptcy jurisdiction, 28 U.S.C. § 1452.   WorldCom, 368 F.3d at 104-05.   In concluding that

6   Section 22(a) and SLUSA did not prevent removal, the court reasoned that SLUSA, in providing a

7   right to remove state law fraud class actions based on covered securities, was meant to *expand*

8   federal jurisdiction.   As such, "[i]t would be ironic to read SLUSA as implicitly *contracting* federal

9   jurisdiction."   Id. at 104.   Other courts have reached similar conclusions.   See Katz, 552 F.3d at 561

10  (rejecting argument that action was not removable because it was not a "covered class action"

11  under Section 77p(c)); Cobalt Partners, 2016 WL 4488181, at *6 (applying reasoning from

12  WorldCom and concluding that Securities Act claims were removable as related to bankruptcy

13  proceedings).   Indeed, not even Luther went so far as to hold that Section 77p(c) (as opposed to the

14  more "specific" nature of Section 22(a)) precluded removal under CAFA.   See Luther, 533 F.3d at

15  1033 n.1.

16      Accordingly, each of the cases Plaintiff cites on this score is inapposite.   They conclude

17  only that Section 77p(c) does not itself provide removal authority for Securities Act claims.

18  Plaintiff's cases do not address whether removal is permissible under another statute, such as

19  CAFA, the statute on which Defendants removed here.   See Cyan, 138 S. Ct. at 1078 (holding that

20  removal of Securities Act claims is not permitted under Section 77p(c)); Order Granting Motion to

21  Remand, Baker v. Dynamic Ledger Sols., Inc., 17-cv-06850-RS, ECF No. 34, at 3 (N.D. Cal. Apr.

22  19, 2018) (concluding that Section 77p(c) does not authorize removal of Securities Act claims or

23  non-precluded state law claims; not considering removal under CAFA); Cervantes, 2015 WL

24  6163573, at *1 (concluding that Section 77p(c) does not authorize removal of Securities Act

25  claims); Rajasekaran, 2014 WL 4330787, at *1 (same); see also Kircher v. Putnam Funds Tr., 547

26  U.S. 633, 638 (2006) (considering SLUSA's preclusion provision over state law claims involving

27  covered securities).

28

---

[6] Plaintiff acknowledges that this Action does not involve "covered securities."   (Mot. 6:21.)

1    Finally, Plaintiff's contention that Section 22(a) and SLUSA are meant to preserve for state
2    courts class actions that are "'primarily of state concern,'" or that raise "no particular national
3    interest" proves Defendants' point.  (Mot. 6:20-25 (quoting <u>Cyan</u>, 138. S. Ct. at 1071).)  If Section
4    22(a), as amended by SLUSA, is meant only to preserve state court jurisdiction over actions
5    "'primarily of state concern,'" <u>Cyan</u>, 138 S. Ct. at 1071 (citation omitted), then there is no reason
6    to construe Section 22(a) to preclude removal under CAFA, a statute uniquely concerned with
7    providing a federal forum for "'interstate cases of national importance.'"  <u>Standard Fire</u>, 568 U.S.
8    at 595 (citation omitted); <u>Estate of Pew</u>, 527 F.3d at 32 (concluding that CAFA reflects "an overall
9    design to assure that the federal courts are available for all securities cases that have national
10   impact (including those that involve securities traded on national exchanges), without impairing the
11   ability of state courts to decide cases of chiefly local import or that concern traditional state
12   regulation of the state's corporate creatures").  This is not a case that is "primarily of state
13   concern," but is one of first impression on behalf of a nationwide class raising issues of national
14   importance concerning the manner in which virtual currencies may be regulated.

15        **E.      Plaintiff's Policy Arguments Ignore The Overriding Policy Of CAFA**

16        Plaintiff's argument that CAFA removal would "undermine the very purpose of [the
17   Section 22(a)] removal bar" provides no reason to reject removal here.  (Mot. 7:20.)  All removal
18   statutes "undermine" a plaintiff's choice of a state forum or the concurrent jurisdiction of state and
19   federal courts.  (Mot. 7:25-8:6.)  And the whole point of removal statutes is that there are instances
20   in which competing policies outweigh the policies underlying a removal bar.  As one court aptly
21   explained it, Congress draws a line where it "intended the right granted a Securities Act claimant to
22   cease and the protection granted defendants to commence."  <u>Gregg</u>, 348 F. Supp. at 1015.

23        Here, Congress has expressed "a strong preference that interstate class actions should be
24   heard in a federal court if properly removed by any defendant."  <u>Dart Cherokee</u>, 135 S. Ct. at 554
25   (citation omitted).  In contrast, there is an "absence of any legislative history explaining the
26   jurisdictional approach taken in the [Securities] Act."  Trevor M. Cutaiar, Comment, "Are
27   Securities Act of 1933 Claims Filed In State Court Removable Under The Class Action Fairness
28   Act of 2005?  A Proposed Resolution To A Statutory Conflict," 55 Loy. L. Rev. 559, 582 (2009).

CAFA's policy thus overrides the unstated general considerations of Section 22(a).

## IV. THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Plaintiff's contention that he is entitled to attorney's fees and costs because "removal here lacked a reasonable basis in light of the Ninth Circuit's controlling holding in Luther" is wrong. (Mot. 8:11-12.)  Courts award attorney's fees under 28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal."   Jordan, 781 F.3d at 1184 (citation omitted).  That standard has not been met here.

As demonstrated above, Defendants believe strongly that the analysis herein is correct and warrants denial of Plaintiff's Motion.  Certainly Defendants have a reasonable basis for (i) distinguishing Luther based on the existence of removable state law claims in the instant case— which did not exist in Luther and which directly undermine the very rationale of Luther—and which Plaintiff does not even attempt to argue are not removable under CAFA, (ii) arguing that Luther has been abrogated by the decision of the Supreme Court in Dart Cherokee, and (iii) arguing for a limitation or reconsideration of the decision in Luther in light of subsequent developments, including the development of an inter-circuit split.  Courts reject requests for fees under such circumstances.  See, e.g., Jordan, 781 F.3d at 1184 (reversing award of fees following CAFA removal, when reasoning of the district court had been abrogated by Dart Cherokee).  Indeed, the author of the California district court opinion affirmed by the Ninth Circuit in Luther, the Honorably Mariana Pfaelzer, observed in a later case that post-Luther developments raised "difficult questions of statutory interpretation," and  that "Defendants appear to have non-frivolous arguments for a change in law due to post-Luther developments" suggesting that even she believes that Luther should be reconsidered.  Morgan Stanley, 605 F. Supp. 2d at 1074, 1075 n.1.

## V. CONCLUSION

Defendants removed this Action, alleging both state and federal Securities Act violations, under CAFA.  Plaintiff does not even attempt to argue (nor can he) that removal of his state law claims under CAFA was deficient.  Where one claim in an action is removable on diversity grounds, here, Plaintiff's state law claims, the entire action is removable.  Thus, Defendants' removal was entirely proper, neither Luther nor SLUSA demand a different result, and the Court

1 | should deny Plaintiff's Motion to Remand.

2 | DATED:  July 11, 2018

3 |                                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4 |

5 |                                By: _____*/s/Peter B. Morrison*_____

6 |                                           Peter B. Morrison
                                            Attorney for Defendant

7 |                                Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse